# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KELLEY KASUL, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>MADAVOR MEDIA, LLC,<br><br>　　　　　　Defendant. | CASE NO. 1:22-cv-00914-HYJ-RSK<br>CLASS ACTION<br><br>Chief Judge Hala Y. Jarbou<br>Magistrate Judge Ray Kent |

**MEMORANDUM IN SUPPORT OF
DEFENDANT MADAVOR MEDIA, LLC'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

130217906

## TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| **I.** | INTRODUCTION. | 5 |
| **II.** | FACTUAL BACKGROUND. | 7 |
| **III.** | LEGAL STANDARD. | 8 |
| **IV.** | ARGUMENT. | 9 |
| | A. Plaintiff's Claims Are Barred by the Applicable Statute of Limitations. | 9 |
| | B. The FAC Fails to State a Claim Under Rule 12(b)(6). | 12 |
| **V.** | CONCLUSION. | 16 |

130217906

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 9, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 8, 9, 16

*Bishop v. Lucent Techs., Inc.*,
  520 F.3d 516 (6th Cir. 2008) ..................................................................................... 15

*Browning v. Buko*,
  2022 WL 4117478 (Mich. Sept. 9, 2022) (Viviano, J., dissenting) ....................... 10, 11

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
  648 F.3d 365 (6th Cir. 2011) ....................................................................................... 9

*Gladych v. New Family Homes, Inc.*,
  468 Mich. 594 (2003) ................................................................................................ 11

*Krassick v. Archaeological Ins. of Am.*,
  2022 WL 2071730 (W.D. Mich. June 9, 2022) (Jarbou, J.) ....................................... 10

*Nashel and Robinson v. The New York Times Company*,
  2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) .......................................................... 14

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
  650 F.3d 1046 (6th Cir. 2011) ...................................................................................... 9

*Pratt v. KSE Sportsman Media, Inc.*,
  586 F. Supp. 3d 666 (E.D. Mich. 2022) .................................................................... 10

*Rhodes v. R & L Carriers, Inc.*,
  491 F. App'x 579 (6th Cir. 2012) ................................................................................. 9

*Scheid v. Fanny Farmer Candy Shops, Inc.*,
  859 F.2d 434 (6th Cir. 1988) ........................................................................................ 8

*Wheaton v. Apple Inc.*,
  2019 WL 5536214 (N.D. Cal. Oct. 25, 2019) ....................................................... 14, 15

**Statutes**

M.C.L. § 445.1712 (1989) .............................................................................................. 12

M.C.L. § 445.1713 (1989) ...........................................................................................................12

M.C.L. § 445.1715(2) ................................................................................................................10

Michigan's Preservation of Personal Privacy Act, H.B. 5331, 84th Leg. Reg.
    Sess., P.A. No. 378 (Mich. 1988) ...................................................................................... *passim*

**Other Authorities**

Rule 12(b)(6) ............................................................................................................... *passim*

**I.      INTRODUCTION.**

As this Court is aware, this case is just the latest of dozens of copycat lawsuits brought by the lawyers for Plaintiff Kelley Kasul ("Plaintiff") in this Court, aiming to take advantage of the now-removed statutory damages provision in Michigan's Preservation of Personal Privacy Act, H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989) (the "PPPA"). Notably, Plaintiff filed the instant First Amended Complaint (Dkt. No. 18, the "FAC") after Defendant Madavor Media, LLC ("Madavor") filed a motion to dismiss for lack of any factual allegation regarding Madavor's sharing of Plaintiff's personal subscription information in 2016.

As a threshold matter, Plaintiff's claims are time-barred. Because the Michigan legislature amended the PPPA on July 31, 2016, to remove the availability of statutory damages, the only potentially actionable claims by Plaintiff are from July 31, 2016. Plaintiff, however, did not file this lawsuit until October 4, 2022, more than six years after the last day that claims were available. Even under a six-year statute of limitation, Plaintiff's claims are time-barred.

Notwithstanding the claims being time-barred, Plaintiff has still failed to state a viable claim under Rule 12(b)(6) for violation of the PPPA, even after her chance at amendment. Plaintiff infers generally that, because she received junk mail, it must be because Madavor disclosed the "Private Reading Information" ("PRI") and other individualized information of Plaintiff and Outdoor Photographer magazine subscribers "during the relevant pre-July 31, 2016 time period" in violation of the PPPA. But apart from cherry-picked references to third-party website reports and misinterpretations of Madavor's alleged privacy policy, Plaintiff provides no real facts to substantiate her conclusions or get them past the speculative level. In other words, the FAC lacks sufficient factual support.

The version of the PPPA at issue—i.e., the pre-July 31, 2016, version of the statute—forbid the knowing disclosure of personally identifying information of subscribers without notice and an opportunity to opt out. The FAC includes no facts whatsoever about the *actual* disclosure of *any* Outdoor Photographer customer information, including Plaintiff's information, between June 26, 2016, and July 30, 2016,[1] to third-party appenders or aggregators for purposes that may have led to Plaintiff's receipt of junk mail. Even at a basic level, Plaintiff does not identify the dates of her subscription, who supposedly received her information, whether her information was aggregated with other information and subsequently sold, when these disclosures occurred, or how her damages (receiving junk mail) relate to the purported wrongful conduct.

The only "documentary evidence" on which Plaintiff bases her claim are (1) a screenshot of a *third-party* list broker's website from **2022** indicating, at most, access to purported information of Outdoor Photographer magazine subscribers "through 6/30/**2022**"[2] (FAC ¶ 2.); (2) a second screenshot of this same *third-party* list broker's website from **2006** similarly indicating access to purported information of Outdoor Photographer magazine subscribers "through 10/04/**2006**" from the magazine's previous owner, Werner Publishing (*id*. ¶ 4); and (3) Madavor's *general* online privacy policy from July 9, 2016 (the "Privacy Policy"). None of these documents indicate specifically that there was any inappropriate aggregating and sharing of individual Outdoor

---

[1] Plaintiff alleges the relevant time period is just one month—between June 26, 2016, and July 30, 2016, if her "tolling" theories are accepted. (FAC, ¶ 1 n.1). By referring to this period, Madavor does not concede, and in fact still disputes, that Plaintiff has a claim from facts going back to June 26, 2016.

[2] In the FAC, Plaintiff alleges Madavor publishes and publicly advertises data cards including the data card from 2022. (FAC, ¶¶ 2-3). This is incorrect. Instead, the data cards referenced by Plaintiff actually belong to a third-party list broker, NextMark, Inc. ("NextMark"), who merely connects marketers with other third parties who purport to sell subscriber information. *See* https://www.nextmark.com/company/faq/ ("Q: Can I buy media directly from NextMark? A: No. Although NextMark maintains the largest index of addressable media and technology that powers the media marketplace, you can't buy media from us.") (Last visited Jan. 15, 2023).

Photographer consumer subscriber information by Madavor during the relevant one-month period in 2016, nor that Plaintiff's subscription was even active at that time or "recently expired." Indeed, Plaintiff fails to identify a single data aggregator or appender that may have obtained Plaintiff's information, state how Madavor profited from any such disclosure of Plaintiff's information, or plead if any other data about Plsaintiff was obtained by Madavor from third-party sources and subsequently disclosed. Accordingly, even if the Court concludes that the claims are not time-barred, the case should be dismissed under Rule 12(b)(6).

## II.  FACTUAL BACKGROUND.

Apart from claiming Plaintiff "saw a dramatic uptick of junk mail in her inbox" (FAC, ¶ 8), the FAC does not allege any facts regarding Plaintiff's personal experience or personal harm. Critically, even though Plaintiff focuses the relevant time period to just one month, Plaintiff fails to allege the actual dates of her subscription to Outdoor Photographer, or that *her* personal subscription information is or was in the possession of a data list broker or sold to any data list broker or third-party with appended information for profit.

Instead, the FAC speaks in generalities about how the data broker industry works, distorts the facts around the Privacy Policy, and makes significant leaps in logic and connecting facts to conclude that Plaintiff's PRI was disclosed without notice to third parties in the one month prior to July 31, 2016. There are no facts in the FAC establishing or even suggesting that Plaintiff's PRI was disclosed to anyone at any time without notice to Plaintiff. Plaintiff states in conclusory fashion that Madavor "rented, exchanged, and/or otherwise disclosed" its customers' PRI—i.e., names, home addresses, and the titles of publications subscribed to—to third parties without consent or notice, and that such disclosures violated the PPPA. (FAC, ¶¶ 1, 11.) But Plaintiff does not provide any facts to suggest that Madavor *actually disclosed* Plaintiff's PRI during the relevant

time period, to whom such disclosure was made, or how her information was used. Indeed, Plaintiff fails to identify the "junk mail" she received or the sources of such mail.

Despite hundreds of pages of exhibits and multiple pages of generalized allegations, Plaintiff's entire case against Madavor turns on two similarly irrelevant one-page data cards and a gross misreading of the Privacy Policy. The data cards are *snapshots of a third-party webpage* representing data cards from NextMark showing the purported availability of the Outdoor Photographer magazine mailing list through June 30, 2022, *several years after* the purported relevant time period, as well as through October 4, 2006, *several years before* the purported relevant time period. (FAC, ¶¶ 2-4). Although Plaintiff states she subscribed to Outdoor Photographer magazine sometime before July 31, 2016, Plaintiff claims these unauthenticated third-party data cards of active and recently expired subscriber information are evidence of Madavor's unauthorized disclosure of Plaintiff's subscription and demographic information in the statutory period. (FAC, ¶ 15.) What is more egregious, Plaintiff suggests that this third-party website is evidence of *Madavor's* offer to provide renters access to mailing lists, or that Madavor already did provide such access. (*See* FAC, ¶¶ 3-6.) Based on these "discoveries," Plaintiff filed this class action seeking to represent a class of Michigan residents who allegedly had their PRI disclosed to third parties by Madavor without notice prior to July 31, 2016. (FAC., ¶ 55.)

### III. LEGAL STANDARD.

The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and the "claim to relief must be plausible on its face" *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). If the plaintiff does not "nudge[ ] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. for Bio-Ethical Reform*, 648 F.3d at 369. The Sixth Circuit has noted that courts "may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). A complaint "must assert sufficient facts to provide the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests." *Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 582 (6th Cir. 2012) (citing *Twombly*, 550 U.S. at 555).

IV.   **ARGUMENT.**

    A.   **Plaintiff's Claims Are Barred by the Applicable Statute of Limitations.**

The instant action was filed on October 4, 2022. The Complaint includes a request for relief on behalf of the named plaintiff and a putative class in the form of $5,000 in statutory damages for each purported violation. (FAC., ¶ 79.) To be entitled to a statutory damages award pre-

9

amendment, the cause of action must have arisen on or before July 31, 2016, and it must have been filed (at the latest) within six years of the date the purported disclosure occurred.[3] *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp.3d 666, 675 (E.D. Mich. 2022). Here, Plaintiff's claims are barred by the statute of limitations. Six years from the last day when the claim could have accrued under the statute (July 30, 2016) passed on July 31, 2022. This lawsuit was not filed until October 4, 2022, well after the expiration of the statute of limitations.

Plaintiff contends that she is entitled to certain relief from the limitations period based on the Governor's Executive Order No. 2020-58 ("Executive Order") and Michigan Supreme Court's Administrative Orders in response to the COVID-19 pandemic. (*See* FAC., ¶ 1 n.1.) These orders purport to toll statutory limitations periods under Michigan law for what ultimately amounts to a period of 101 days between March 10, 2020, and June 20, 2020. *See Browning v. Buko*, 2022 WL 4117478, at *1 (Mich. Sept. 9, 2022) (Viviano, J., dissenting). This would mean that the limitations period for Plaintiff's claim is extended to November 9, 2022. Plaintiff, however, is wrong.

As recognized by Plaintiff, the Executive Order applies to "all deadlines applicable to the *commencement* of all civil and probate actions and proceedings" and "the *commencement* of all civil and probate case types." (FAC ¶1 n.1) (citing Mich. Supreme Court Administrative Order 2020-3, Mich. Executive Order No. 2020-58) (emphasis added). The Executive Order extended by 101 days the time for *filing* a claim; it certainly did not (and did not purport to) extend the cause of action for statutory damages. Indeed, an executive order could not override or extend the

---

[3] The PPPA was amended effective July 31, 2016, to eliminate any available recovery for statutory damages. *See* MCL § 445.1715(2). Defendant is aware that this Court has concluded that the six-year statute of limitations applies. *See Krassick v. Archaeological Ins. of Am.*, 2022 WL 2071730, at *1 (W.D. Mich. June 9, 2022) (Jarbou, J.). Without conceding this issue, as set forth herein, the six-year statute of limitations has expired, and the case should be dismissed.

10

legislature's termination of causes of action for statutory damages.[4] Thus, on its face, the Executive Order applies only to the commencement of claims rather than extension of certain remedies found in causes of action. Even if Plaintiff is correct that her deadline to file a claim under the PPPA was tolled for 101 days, the remedy of statutory damages was not preserved as part of that tolling.

Nor do the Court's Administrative Orders save Plaintiff's claim. In *Browning*, the Michigan Supreme Court was asked to review the propriety of the tolling order but declined to take up the issue. *Id*. However, in a dissenting opinion, Michigan Supreme Court Justice David Viviano, joined by Justice Brian Zahra, acknowledged that the defendants' argument that these "administrative orders improperly exercised legislative power" was a "strong argument that merits our attention." *Id*. at *2. Indeed, it appears the Michigan Supreme Court lacks authority to issue "court rules that prevail over statutes." *Id*. It "may only do so in matters dealing with practice and procedure in the courts and not in matters involving substantive law," and the Court has previously held that "[s]tatutes regarding periods of limitations are substantive in nature." *Id*. (citing *Gladych v. New Family Homes, Inc*., 468 Mich. 594, 600 (2003)). Thus, the Court concluded in the past, "to the extent [a statute] enacts additional requirements regarding the tolling of the statute of limitations, the statute would supersede the court rule." *Id*. The Michigan Supreme Court Administrative Orders, therefore, cannot extend the statutory limitations period.

Here, the lawsuit was filed on October 4, 2022, more than six years and 64 days after the amendments to the PPPA took effect. Thus, the Court should find that regardless of what

---

[4] This conclusion is also consistent with the legislative history of the 2016 Amendment, which provides, in pertinent part: "[t]he amendatory act is curative and intended to clarify that the prohibitions on disclosing information . . . and that a civil action for a violation of those prohibitions may only be brought by a customer who has suffered actual damages as a result of the violation." S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (Mich. 2016).

11

130217906

limitations period is applied, it expired before this case was filed and this case should be dismissed, with prejudice.

### B.      The FAC Fails to State a Claim Under Rule 12(b)(6).

Even if Plaintiff's claim is not time-barred, it should be dismissed because the FAC presents no facts to plausibly suggest that Madavor unlawfully disclosed Plaintiff's PRI to third parties in violation of the PPPA between June 27, 2016, and July 32, 2016. To state a claim under the prior version of the PPPA, the plaintiff must plead facts indicating that (i) the defendant knowingly disclosed personally identifying reading information about the plaintiff (ii) to any person (iii) without notice or permission. M.C.L. §§ 445.1712, 445.1713 (1989) (barring "knowing" disclosure "to any person, other than the customer, a record or information concerning the purchase . . . of [written] materials by a customer that indicates the identity of the customer" except "for the exclusive purpose of marketing goods and services directly to the consumer" with "written notice" and opportunity to opt out). Plaintiff's claim is based on the conclusory allegation that Madavor disclosed her PRI to "data aggregators, data appenders, data cooperatives, and list brokers . . . during the relevant pre-July 31, 2016 time period" and that led to the sale of her information to advertisers, political organizations and others (FAC., ¶ 48.) Other than passing reference to unidentified junk mail, Plaintiff does not allege *any* supporting facts for this conclusory statement. When read closely in connection with the exhibits to the FAC, the Court must conclude that Plaintiff has not alleged adequate facts for the Court to infer that it is plausible that Madavor is liable for the alleged misconduct as to Plaintiff. *See Ashcroft*, 556 U.S. at 678.

Plaintiff does not identify the actual dates of her subscription, or a single third party who received Plaintiff's PRI, let alone how or when that disclosure occurred, including whether the disclosure occurred between June and July 2016. Nor does Plaintiff allege who the "junk mail" advertisers were or are, or what information they obtained from Madavor and data appenders that

12

was the *de facto* cause of any harm to her. Rather, Plaintiff's claim is based on conclusory allegations about disclosure (FAC, ¶¶ 1-2, 9, 11-12, 15, 47-54, 66-79), along with more than 25 paragraphs addressing the history of the PPPA, comparable federal law, and the "private information market" industry in general. (*Id.*, ¶¶ 20-46). Plaintiff then attempts to incorporate "documented evidence" consisting of irrelevant 2006 and 2022 third-party web content to create a *suspicion* that *maybe* Plaintiff's PRI was indeed disclosed by Madavor in the one month in 2016 to third parties who then aggregated the information and eventually sold it to other advertisers resulting in junk mail to her.

Importantly, Plaintiff's so-called "documented evidence" of Defendant's PPPA violations fails to plausibly support the conclusion that Defendant violated the PPPA between June 26, 2016, and July 31, 2016. First, Plaintiff relies on unauthenticated *third-party* list broker's (NextMark) two online data cards dated **June 30, 2022,** and **October 4, 2006**. (*See* FAC, Ex. A, B.) The first data card shows only that sometime after June 30, 2022 (almost five years after any alleged statutory violation), a third party (not Madavor) made available certain active and recently expired subscriber information of Outdoor Photographer. (*Id.*) The second data card shows only that sometime after October 4, 2006 (almost ten years before any alleged statutory violation), this same third party (not Madavor) made available this same type of information. These data cards do not identify from where the information is or would be obtained,[5] what PRI (if any) they contain, or, most importantly, that any Outdoor Photographer subscriber information from before July 31, 2016, is contained therein *and* was disclosed in the June-July 2016 time frame. Second, and relatedly, the more recent data card of 2022 refers only to active subscribers and recently expired

---

[5] Continuing her trend of grossly misinterpreted conclusions and allegations, Plaintiff claims that "direct mail sold" reference on the data cards suggests that the PRI originates directly from Madavor (FAC ¶ 6), but there is nothing to suggest that this reading is reasonable.

"12 month subscribers," yet Plaintiff alleges only that her subscription was sometime before 2016—a date not referenced in any of the data cards.

Indeed, Judge Stephen Murphy of the Eastern District of Michigan recently dismissed a PPPA claim that attempted to rely on a NextMark data card. *See Nashel and Robinson v. The New York Times Company*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022). Just like Plaintiff, the *Nashel* plaintiffs argued that an obsolete NextMark "mailing list" showing customer "counts" through June 30, 2007, supported an inference that the defendant violated the PPPA during the relevant pre-July 31, 2016, period. *Id.*, at *1. The court held that these allegations "fail to clear the plausibility threshold" because the data cards "were posted years before the relevant period," Plaintiffs' only "cure for the timing issue" was a "legal-conclusion inference" that made their allegations "merely *possible* rather than plausible," and the "data cards . . . fail to support a crucial element of Plaintiffs' alleged action: that *Defendant* engaged in the business of selling written material to disclose information personally identifying the customer." *Id.*, at *4-5 (citation omitted). The *Nashel* court was faced with the exact same PPPA claim as this Court is here, supported by a comparably outdated NextMark "mailing list" purporting to "count" individuals who made purchases years outside the period in which the PPPA claim accrued, and concluded that those allegations did not plausibly state a claim for relief. Judge Murphy refused to make what he called "a large inferential leap" and dismissed the complaint. *Id*. This case is substantially similar to the *Nashel* case—in fact, *Nashel* was one of the many cookie-cutter cases brought by the same attorneys who brought this case—and the result should be the same.

In yet another action alleging claims under the PPPA, the court dismissed a similar complaint against Apple for failure to plead plausible facts. *See Wheaton v. Apple Inc.*, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019). The court dismissed the plaintiffs' PPPA claim because "[t]he

14

complaint fail[ed] to plausibly allege with enough facts that Apple disclosed plaintiffs' personal listening information to third-party data brokers and similar entities," and the data cards identified in the complaint "d[id] not show that Apple disclosed customers' personal listening information." *Id*. at *5. Again, the results here should be the same.

Next, Plaintiff attaches what she believes is Madavor's online Privacy Policy from July 9, 2016. (*See* FAC, Ex. C.) Plaintiff, however, grossly misreads the Privacy Policy to allege that "Madavor automatically disclosed all of its customers' Personal Reading Information to these numerous third parties unless the customer … wrote to the company to request to be 'opt[ed] out' of having his or her 'Personal Information disclosed to or shared with third parties in the future." (FAC, ¶ 5.) Nothing in the Privacy Policy supports this conclusion. Indeed, the quote that Plaintiff references states only that Madavor "*may* share [personal] information with others…." (*Id*. (emphasis added).) Similarly, Plaintiff alleges that "Madavor also admitted in its Privacy Policy to enhancing its subscribers' [PRI] by sending their data to third parties for additional data to be appended to it," yet cites to the portion of the Privacy Policy that states only that Madavor *receives* additional information, not that it sends or shares it. (*Id*.) In any event, Plaintiff does not allege how this Privacy Policy is relevant to her subscription at all—in fact, she claims that she was not provided or referred to this online policy when she subscribed.

Because the FAC does not allege facts that support the conclusion that Madavor plausibly violated the PPPA with respect to the named Plaintiff (or any putative class member), Plaintiff has not met the requirements for pleading a claim under the statute. *See, e.g., Bishop v. Lucent Techs., Inc*., 520 F.3d 516, 520 (6th Cir. 2008) ("[I]t is not enough for plaintiffs to argue that the complaint, because it is silent…, must be read in the light most favorable to them and construed as not precluding the possibility that they will be able to prove facts establishing their entitlement to

relief… A complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient.") The FAC falls short of the "line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557. Thus, Plaintiff's claims fail to meet the pleading standards of Rule 12(b)(6) and should be dismissed.

V.     **CONCLUSION**.

For the foregoing reasons, and because it is obvious that Plaintiff is operating only on conjecture at this point, the FAC should be dismissed with prejudice.

DATED:  January 17, 2023

Respectfully submitted,

BLANK ROME LLP

By: */s/ Ana Tagvoryan*
Ana Tagvoryan
ana.tagvoryan@blankrome.com
Harrison Brown
harrison.brown@blankrome.com
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Tel.: 424.239.3400
Fax: 424.239.3434

Attorneys for Defendant
INFORMA MEDIA, INC.

130217906

## **CERTIFICATE OF COMPLIANCE**

The Memorandum in Support of Madavor Media, LLC's Motion to Dismiss complies with the word count limitation of W.D. Mich. LCivR 7.2(b)(i) because the brief contains 3,863 words, as defined by W.D. Mich. LCivR 7.2(b)(i). The word count was generated using Microsoft Word 365.

DATED:  January 17, 2023                Respectfully submitted,

                                                        BLANK ROME LLP

                                                        By:  */s/ Ana Tagvoryan*
                                                               Ana Tagvoryan
                                                               ana.tagvoryan@blankrome.com
                                                               Harrison Brown
                                                               harrison.brown@blankrome.com
                                                               2029 Century Park East, 6th Floor
                                                               Los Angeles, CA 90067
                                                               Tel.:  424.239.3400
                                                               Fax:  424.239.3434
                                                      Attorneys for Defendant

130217906

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys or parties of record.

By: */s/ Ana Tagvoryan*
     Ana Tagvoryan

130217906